UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERRY DILLABAUGH,<br><br>Defendant. | 3:18-CR-30062-01-RAL<br><br>**ORDER DENYING MOTION FOR SENTENCE REDUCTION FOR HOME CONFINEMENT** |

**I.   Background**

On May 15, 2018, a federal grand jury indicted Terry Dillabaugh (Dillabaugh) on one count of possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2, and one count of possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2), and 924(d). Doc. 1. A conviction under 21 U.S.C. § 841(b)(1)(B) carries a mandatory minimum sentence of five years imprisonment and at least four years of supervised release. 21 U.S.C. § 841(b)(1)(B). A person convicted under 18 U.S.C. § 922(g) could face a prison term of up to ten years. 18 U.S.C. § 924(a)(2). On September 10, 2019, a superseding indictment was filed charging the same offenses but adding the word "knowingly" into the body of the charge in the firearm count. Doc. 127. On September 24, 2019, Dillabaugh pleaded guilty to a superseding information charging only one count: possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1),

1

841(b)(1)(C), and 18 U.S.C. § 2. Docs. 137, 142. A conviction under 21 U.S.C. § 841(b)(1)(C) does not carry any mandatory minimum term of custody. 21 U.S.C. § 841 (b)(1)(C).

This Court held Dillabaugh's sentencing hearing on December 16, 2019. Doc. 169. At that time this Court considered the defendant's objections to the presentence investigation report, and found that the firearm enhancement did not apply, making his adjusted guideline range 37-46 months in custody. Doc. 171-1. After considering the sentencing factors found in 18 U.S.C. § 3553(a), this Court determined that a sentence within the guideline range of 44 months was sufficient but not greater than necessary to meet the sentencing goals outlined in 18 U.S.C. § 3553(a)(2). Doc. 171. This Court also recommended that Dillabaugh be designated to serve his sentence at the Bureau of Prisons (BOP) facility in Yankton, South Dakota, and that he be allowed to participate in the BOP's substance abuse treatment program. Doc. 171 at 2.

Dillabaugh is currently confined at Federal Correctional Institution Forrest City Low (Forrest City Low) in Forrest City, Arkansas. See Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last checked June 18, 2020). His projected release date is December 29, 2022. Id.

Since Dillabaugh's sentencing, the novel coronavirus COVID-19, a highly contagious respiratory illness, has swept across the globe and impacted the United States in remarkable ways. On March 27, 2020, Dillabaugh sent a request to the warden of Forrest City Low requesting compassionate release based in part on concerns related to COVID-19. Docs. 193 at 2; 197 at 71. The request was marked as received by the warden on April 2, 2020, and Warden DeWayne Hendrix, denied the request on April 20, 2020. Doc. 197 at 70. In the interim, Dillabaugh drafted a pro se motion for sentence reduction for home confinement and filed it with this Court in his criminal case. Doc. 179. Pursuant to Standing Order 20-06 issued in light of the COVID-19

2

pandemic affecting the United States, the Federal Public Defender filed a supplement to Dillabaugh's pro se motion. Doc. 198. The Government filed a response opposing the motion, Doc. 203, to which Dillabaugh replied, Doc. 206. The matter is now fully submitted.

Forrest City Low has felt the significant effects of the COVID-19 pandemic. According to the Bureau of Prisons' reporting website, Forrest City Low currently has 149 inmates and one staff member positive with COVID-19, and it has 550 inmates and three staff members recovered from the disease. See https://www.bop.gov/coronavirus/ (last checked June 18, 2020). No inmate or staff COVID-19 deaths at the facility have been reported. Id.

Dillabaugh argues that his age and medical conditions may make him more susceptible to severe medical complication if he were to contract COVID-19. Doc. 198 at 9. Dillabaugh is 70 years old and suffers from hypothyroidism, hyperlipidemia, and nonrheumatic aortic valve disorder. Docs. 193 at 41, 197 at 39. As part of surveillance screening at Forrest City Low, Dillabaugh was tested for COVID-19 on May 12, 2020. Docs. 200 at 1; 207 at 1. Dillabaugh's test results came back negative for COVID-19. Doc. 207 at 10.

## II.   Legal Standard for Sentence Reduction

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrowly defined circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018, indicates when a court may consider and grant motions to reduce a defendant's sentence. Under the compassionate release statute,

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors

3

>   set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>   (i)   extraordinary and compelling reasons warrant such a reduction; ...
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

### III.   Discussion

Because the Director of the BOP did not bring a motion on Dillabaugh's behalf, and because Dillabaugh has not pursued any administrative appeals of Warden Hendrix's denial of his request for sentence reduction, this Court may consider Dillabaugh's motion only if 30 days have passed since the warden received his administrative request for compassionate release. Warden Hendrix received Dillabaugh's request on April 2, 2020, and denied it on April 20, 2020. Doc. 193 at 1–2.

Some courts have read the compassionate release statute's provision allowing a court to consider a motion brought by a defendant after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," to mean that such motion may be brought if thirty days have passed without a response from the warden. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) ("Because more than 30 days have passed without a response from the warden, the Court has jurisdiction to hear the motion."); United States v. Brown, 411 F. Supp.3d 446, 452 (S.D. Iowa Oct. 8, 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it."); United States v. Moravetz, 4:18-cr-40117-KES, Doc. 231 (D.S.D. April 27, 2020) ("[A]n inmate can [bring] a motion for compassionate release directly to the court if the Bureau of Prisons does not act on an inmate's compassionate release motion within 30 days of receipt of the motion,

4

or if the inmate has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons to bring a motion on the inmate's behalf (whichever is earlier)."). Other courts however have interpreted the thirty day provision to allow Courts to act on a defendant's motion thirty days after a warden receives a reduction in sentence request, even if the warden has denied it and the defendant has not made any attempts to appeal that decision administratively. See United States v. Brown, 4:05-CR-00227-1, 2020 WL 2091802, at *3 (S.D. Iowa Apr. 29, 2020) ("[T]he statute's plain text states only that thirty days must pass after the defendant requests compassionate release from the warden. No more, no less."); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (finding that the court could rule on a reduction in sentence motion thirty days after the Bureau of Prisons received a request from the defendant, even though the BOP responded to the request before the thirty days had elapsed). Based on the plain language of the statute, this Court will consider Dillabaugh's motion because more than 30 days have passed since the warden received his compassionate release request.

  Dillabaugh's sentencing was conducted approximately six months ago, and at that time this Court considered the relevant sentencing factors listed in 18 U.S.C. § 3553(a). This Court considered, not only "the history and characteristics of the defendant," which included his advanced age and his very minimal criminal history, but also considered "the nature and circumstances of the offense" and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. 3553(a)(1)–(2). Dillabaugh pleaded guilty to possession with intent to distribute a substance or mixture containing a detectable amount of methamphetamine, a serious offense. The factual basis statement that Dillabaugh signed to establish the basis for his guilty plea indicates that he and his codefendant possessed 70 grams of methamphetamine at the time of their arrest. Docs. 132 at 21

5

157 at 4. That amount of methamphetamine could have warranted a mandatory minimum five year sentence if Dillabaugh had pleaded to the drug charge in the superseding indictment under 21 U.S.C. § 841(b)(1)(B); rather, Dillabaugh negotiated a favorable plea agreement which allowed him to plead to the lesser drug charge under 21 U.S.C. § 841(b)(1)(C), and which allowed him to receive a within guideline range sentence of 44 months custody. The sentence this Court previously imposed is sufficient but not greater than necessary and reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. This Court keeps these sentencing factors in mind as it next analyzes whether "extraordinary and compelling reasons" warrant a sentence reduction.

Congress has not defined what constitutes "extraordinary and compelling reasons," but has left it to the Sentencing Commission to promulgate such criteria and provide examples. 28 U.S.C. § 994(t). The Sentencing Commission provided specific scenarios that would qualify as "extraordinary and compelling reasons" for a sentence reduction in the application notes to Federal Sentencing Guideline § 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the age of the defendant in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also provided that other reasons may constitute extraordinary and compelling reasons for release "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, the Sentencing Commission has not had a quorum and therefore has not updated these provisions since Congress passed the First Step Act which allowed courts to consider compassionate release motions brought by someone other than the Director of the BOP. This has caused district courts to question whether the policy statement still applies, and whether courts may consider other reasons for release that have not been presented

by the Director of the BOP. See Mondaca, 2020 WL 1029024, at *3 (discussing the discord among district courts); Spears, 2019 WL 5190877, at *3 (same); United States v. Brown, 411 F. Supp.3d at 449-50 (same). Several district courts considering the issue have determined that the discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the catch-all provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Dillabaugh argues that he qualifies for release under either § 1B1.13 comment note 1(A)(ii) or comment note 1(D). Doc. 206. Comment note 1(A)(ii) provides that extraordinary and compelling reasons exist when "[t]he defendant is (I) suffering from a serious physical or medical condition, (II) suffering form a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes" his ability to "provide self-care within the environment of a correctional facility and from which he ... is not expected to recover." U.S.S.G. § § 1B1.13 cmt. n.1(A)(ii). Dillabaugh argues that his "age, heart condition, and his inability to adequately provide self-care due to the conditions of his confinement" satisfy the standard under comment note 1(A)(ii). However, this argument seems to miss the mark of comment note 1(A)(ii). It seems to argue that the conditions of confinement make Dillabaugh unable to provide self-care; the comment note however contemplates that it is the defendant's condition, impairment, or health that make him unable to provide self-care in the facility. Dillabaugh does not claim that his medical conditions make it impossible for him to provide self-care nor does he claim that he is experiencing deteriorating physical or mental health that makes him unable to provide such care. Rather, he relies on the conditions of confinement

7

and the inability to provide the type of self-care recommended at this time as the basis for relief under this section. Certainly, Dillabaugh's conditions of confinement and his medical conditions are factors that this Court will consider in assessing whether other extraordinary and compelling reasons exist under comment note 1(D).

With regard to whether other reasons warrant release under comment note 1(D), there is no doubt that the effects of the global COVID-19 pandemic are extraordinary. The illness and the potential for his spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. People have changed the way the interact with one another, and businesses have been forced to alter their modes of operation. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The question becomes whether Dillabaugh's age and medical conditions—hyperlipidemia, hypothyroidism, and an aortic valve disorder—combined with the crowded conditions of confinement justify compassionate release. According to the Centers for Disease Control and Prevention, "COVID-19 is a new disease and there is limited information regarding risk factors for severe disease," but it has recognized that individuals over the age of 65 and those with serious heart conditions may be at risk for a severe form of the illness. Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last checked June 19, 2020). However, there is still much that is unknown about how this virus affects individuals, and this Court cannot say to what extent Dillabaugh's life is threatened by the existence of COVID-19 considering the precautions the BOP has put in place to protect inmates and staff. Additionally, although Dillabaugh has aortic

valve disorder, he still reported being in good health at the time of his presentence investigation, and the health providers at Forrest City Low have found he is asymptomatic and does not require another echocardiogram for three to five years. Docs. 157 ¶ 45; 193 at 8.

When considering the extraordinary circumstances posed by COVID-19 in combination with the sentencing factors of 18 U.S.C. § 3553(a), this Court does not at this time find that the sentence reduction requested is warranted. Dillabaugh asks that his sentence be reduced to time served with the possibility of imposing a term of home confinement as a condition of supervised release. Such a reduction would not be "sufficient" to reflect the seriousness of the offense of Dillabaugh's conviction, to promote respect for the law, or to provides just punishment under 18 U.S.C. § 3553(a).

## IV. Conclusion and Order

For good cause, it is hereby

ORDERED that Dillabaugh's motion for sentence reduction to home confinement, Doc. 179, is denied.

DATED this 19th day of June, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE